Good morning, your honors. May it please the court. Ryan Gallagher, petitioner of the National Parks Conservation Association, or NPCA. Today I'll be addressing our arguments regarding intervention, and then my colleague, Ms. Zerbe, will address our petition for rid of mandamus. And she can also field any questions you might have about standing. With the court's permission, we would like to reserve four minutes for rebuttal. Let me just ask you then, in fairness to your colleague, and since we're on video, I may not be able to manage this quite as well. You'd like to reserve four minutes to mark rebuttal. You have 20 minutes total. How do you intend to allocate your time, and Ms. Zerbe? So our intention, your honor, is to go eight minutes each between the two of us, and then save a collective four minutes for rebuttal. Thank you. So at its core, this dispute is about whether it was legal for FERC to revive a dead license by retroactively applying a later statute. But on the intervention side, the question is narrower. Did FERC act unreasonably when it prevented NPCA, or anyone else for that matter, from even raising this issue as a party within that new proceeding? And on this question, at least, the law is straightforward. There is one rule within the federal power acts implementing regulations that governs intervention, and that's rule 214. NPCA's motion satisfied all of the requirements of rule 214. It was timely. Eaglecrest, the license holder, did not oppose it. So under the plain terms of FERC's own regulations, and in accordance with FERC's own past practice, the commission had no choice but to grant NPCA party status. But FERC didn't do that. In fact, it didn't apply rule 214 at all. Instead, it's cobbled together a string of orders from a very different context, the context of standard extension of time proceedings or other minor post-license proceedings. Mr. Gallagher, let me ask you something. It seems to me that the defendant is suggesting that in the administration of projects, there's a lot of things that occur that are administrative. And you can have a change order if you're building something. You could have a strike where you had to extend times to do things and the like. And there are a lot of administrative decisions that don't really start a new process in which someone would intervene. And for instance, if this request for extension had been made before the deadline in June 19th of 2018, so it wasn't afterwards where you're suggesting there was no authority to do that, would you have taken the position that there was a proceeding in which you would have a right to intervene? So it's true, your honor, that there might be some extension of time proceedings where FERC would like to not allow intervention. But as the regulations are written on their face, as rule 214 is written in its plain terms, we think that they would have to allow intervention in those cases. Even if the extension was done during the period of the project, you would say that's not administrative and a new proceeding has to occur in which notice is given and you get a right to appear. Is that how you interpret this? Under the plain terms of rule 214C1, your honor, I think that is correct. The only requirements that it sets forth are that the motion be timely and that it is unopposed by the license holder. So if we were to give deference to the way that FERC interprets what it does and when it has to give new notice and not, that we might come to a different conclusion than you have. You're just saying that whenever there's anything, they have to start a new proceeding regardless of whether it's administrative or not. And the second question I have is if we were to conclude as a matter of law that the extension could be given because of the subsequent legislation, that would then take you back to the only real issue you had was whether or not you had a right to intervene. Right, your honor. So I'll try to address those questions, maybe starting with your second first. I think the question was, if you disagree with us on our matter of law, can we still get in if we don't think this was an illegal retroactive extension? And the question there is yes for two reasons. And going to your first question of if we defer to FERC's other standard that they have suggested, the two sort of thresholds there are, if there are material changes to the terms and conditions of a license, or if there's an effect on property rights in a way not contemplated in the original license, then intervention may be warranted. That's FERC's alternative standard, and that's presumably, I think, what would be deferred to here. If that is the case, then we satisfy both of those, and we satisfy both of those regardless of whether the court is willing to, you know, firmly agree with us on the merits of our retroactive revival position. First, because I don't think it's necessarily the case that the court has to 100% agree. I think it's enough that that is a debatable point whether or not that there was a unlawful extension of a license here. We should err on the side of a third party being able to enter the proceeding and at least provide that comment to FERC. But even if that's not the case, there were other significant changes that took place here in the environment, in the regulatory context, between the grant of the initial license and the grant of this extension, whatever it was, whether it was illegal under the FPA, whether it was legal under this new law. We know more about the groundwater dynamics in the area than we did when the initial license was granted. There was the Desert Renewable Energy Conservation Plan, which was passed in the intervening years and now imposes new requirements on the development in the area. So all of those are significant changes that, in effect, alter any of the material or, in effect, alter any of the terms and conditions of this license once FERC decided to renew it. But I think going back to this, you know, issue of whether Rule 214 can be said to control it all, I think it's easy to take away from FERC's briefing the notion that notice controls when intervention is allowed. In other words, you can't really get to Rule 214 unless Rule 210 notice has been applied. And as far as I read FERC's briefing, I think they also raised the point that, you know, the standards for notice, the standards for intervention are effectively the same. Even if we don't agree with FERC's argument that notice is really tied into when intervention is required, what do you suggest we do with its long-standing policy not to treat extensions as a material change that would permit intervention under Rule 214? So on the one hand, Your Honor, I think it's important to go to multiple orders where FERC has said that extensions of time can qualify as the sort of proceedings in which intervention is warranted. They said that in central Maine Power. They said that in the City of Tacoma. So it's not necessarily the blanket rule that FERC made it out to be. But this is also the case that this is not a standard extension of time proceeding. If nothing else, FPA, Federal Power Act, allowed for one extension of time when this license was granted. That extension was then So this is not the sort of standard extension of time cases in which FERC has articulated this rule in the past. We're dealing with a much different, much more extreme case. So is the analysis then under Kings River as to whether the particular license extension represents a material change? If the Court disagrees that Rule 214 is the rule that should control, but we do think Kings River would then be the logical place to go. And we would satisfy both of the prongs in Kings River. Although Kings River itself, I should note, says that we only have to satisfy one or the other of those prongs. The last thing that I would just briefly push back on, because I do want to turn it over to my colleague to discuss the mandamus side. But we definitely can't give any credence to FERC's notion that there has to be a physical change in order to allow for intervention. That's really unsupported in any of FERC's orders or regulations. The sources of authority that it has to go to for that are from a completely different regulatory context. That's from proposed amendments to license applications, not licenses that have already been granted. What's the standard that FERC should have used for intervention? Because in hearing your answers, it sounds like up to the last second before the decision in any case, you would take the position that intervention would be appropriate. Maybe that's extending your position too far. But what standard do you think FERC should have applied to your intervention requests? Our primary position, Your Honor, is that they should have applied Rule 214, and specifically Rule 214C1. When the motion was timely, when it was unopposed by Eaglecrest, it should have been granted by operational law, which is what FERC has done in the past. But failing that, if Your Honors disagree that Rule 214 alone should control, then FERC probably should have applied its King's Order standard, and we would have also satisfied that standard. And with that, I would like to turn it over to my colleague if there are no further questions. Thank you. Thank you. Good morning. Amanda Zerbe for the Petitioner. If Your Honors have questions regarding NPCA standing, I'd be happy to address them, but I'd like to focus on our mandamus arguments. Your Honors, this is no ordinary license extension. Eaglecrest's final deadline to start construction passed on June 19, 2018, with Eaglecrest yet to break ground. On that day, our clients breathed a sigh of relief, knowing that once Eaglecrest missed its deadline, its license was a dead letter. They even wrote to FERC on the day of the deadline to tell it so. Our clients could not have anticipated that FERC would try to rewind the clock, applying a law passed after the license expired in order to reinstate it. I'll discuss three primary reasons why that decision was unlawful. First, Eaglecrest's license expired on its own terms in June 2018. Second, Congress declined to make the Infrastructure Act's provisions to Section 13 retroactive. And third, FERC's interpretation of the Infrastructure Act is contrary to Supreme Court precedent and should receive no deference. So to my first point, when Eaglecrest's original 2016 deadline to commence construction expired, Section 13 of the Federal Power Act allowed only a single two-year extension of time to commence construction. That extension expired in June of 2018. This statutory requirement was incorporated into the plain text of Eaglecrest's original license. Article 301 of that license stated unambiguously that the licensee shall commence construction of the project works within two years from the issuance date of the license. That's what our excerpts are. Ms. Zerbe, as everyone knows who files a mandamus, it's an uphill battle always on mandamus under the Bauman factors. But doesn't this case illustrate why mandamus is inappropriate if we entertain the arguments made by Mr. Gallagher, which is judicial review? I apologize, Your Honor. Would you mind repeating that question? Isn't Mr. Gallagher Exhibit 1 as to why judicial review is available here? And so you can't say there's no other means to get your relief. So how do you meet that first factor of Bauman? Your Honor, we are precluded by Cal Trout from actually challenging the FERC's decision in this order, as well as that intersection with the with the Federal Power Act. So the only means that we have to reopen that license proceeding is to pursue a mandamus petition. What do you mean that's the only means? Doesn't the court? So why are we even listening to Mr. Gallagher's argument if there's no other means? Well, Your Honor, FERC does suggest that there might be equitable authority to reopen the mandamus petition. But again, that time has now the time of that proceeding has now run its course. So we need relief on both petitions to fully address our client's harms because we need to be able to be back in the case and back in the proceeding. And we need the proceeding to be reopened in order to actually participate. And so our mandamus relief, what we're asking for is the reopening of that proceeding and for the court to make a decision on FERC's decision there. Does that address your question? Thank you, Your Honor. Let me ask you something. You seem to take the position that when the deadline for construction passed that there was no remedy that the FERC had to extend it. But if you look at 18 CFR 6.3, it looks like when FERC wants to terminate a license that it has to give 90 days a notice. And so it seems that the license would extend what would exist because there was no written notice that it was going to be terminated. And then FERC could then extend it. And it's a discretionary decision to be made by FERC as to whether to terminate the license or not, which they didn't do. They didn't give a 90 days notice and they didn't do it. They extended it. Your Honor, we disagree that that was a discretionary decision by FERC. Section 13 requires FERC to terminate the license when the time to commence construction expired. And in fact, they have to give 90 days notice. What's the purpose of that if it's not discretionary? Well, Your Honor, it suggests that perhaps as a matter of due process, FERC has to perform this ministerial duty of providing notice. But it doesn't change the fact that the plain text of Section 13 says that when the license, the deadline expires, the license expired. The license is no longer valid at the point when the deadline to commence construction expires, just as how when your driver's license expires, you need to go and get a new one. It's not fundamentally valid at that point, even though you may have it in hand. Yeah, but they don't give me 90 days to tell me they're going to terminate my license either. I mean, it terminates. But in this circumstance, in order to have terminated the license, they would have had to given 90 days notice, and then something would have happened, which happened here. It looks like they extended it. Your Honor, that may be true, but I would also note there are other statutory indicators in the Infrastructure Act itself to suggest that Congress did not consider a license to remain valid in a way that FERC could have acted on it. So, for example, there are some project-specific provisions, which we pointed out in briefing, that contain explicit reinstatement provisions. And those provisions equate the expiration of the timeline to commence construction with the expiration of the license. So, that language suggests that that's the case. And even if FERC had terminated the license, it would not have had the authority to extend it. At the time that the deadline expired, at that relevant moment in time, when the events in this case were completed, only one extension was allowed under the Federal Power Act. The additional remnant options provided had not come into effect at that time. So, you're saying, as I understand it, that the termination was by operation of law, and that that statutory provision prevails over whether or not notice had to be given. Because, obviously, there might be a lot of reasons that FERC might terminate a license in advance of the license period, for example, default on conditions of the license, and that sort of thing. But you're saying, in this case, it's an operation of law. Am I correct in understanding that? Yes, Your Honor. I think that is our contention. Our contention is that, under the plain language of Section 13, once that deadline expires, FERC doesn't have discretion anymore to decide when to terminate it. It's fundamentally invalid at that point, and can't be reinstated, as FERC did here. That's our claim. So, just to return to a few final points, before reserving the rest of my time for rebuttal, FERC's retroactive application of law here doesn't warrant any deference. So, in St. Cyr, the Supreme Court was clear at Note 45 that Chevron deference only applies when a statute remains genuinely ambiguous, after all of the normal tools of statutory interpretation have applied. Your Honors, if there are no further questions, I'll go ahead and reserve the rest of our time for rebuttal. Thank you. You may. Thank you. Mr. Fish. Thank you, Judge McEwen. Good morning, Your Honors, and may it please the Court, Jared Fish for the Commission. The Association, as we just heard, insists that Rule 214 required the Commission to grant an intervention in Eaglecrest's post-licensing extension of time proceeding. But there's nothing in Rule 214 that compels that construction. To the contrary, the Commission's alternative reading of its own regulations is a reasonable, if not the most reasonable. Thank you for your question, Judge McEwen. What the Association failed to mention is, every single time the Commission has considered intervention in an extension of time proceeding, it has always denied intervention. That's a 40-year policy. In the Okanagan case in 2017, Felt Mills, in Baldwin Hydroelectric, Wisconsin Valley, Central Maine, every single time the Commission has denied intervention. And that's because it's based on a reasonable reading of Rule 214. Rule 214 does not compel intervention in any proceeding, so long as there's no opposition to the motion. Mr. Fish, let me just understand, though, because this does seem like a different kind of case. So in those cases where there was intervention with respect to extension, was that an extension given by statute, with authority to give by statute, or in what situation? Well, I believe the extension was given under the two years provided in the old version of Section 13. But there is nothing in Section 13 that precludes the Commission from extending a deadline that has already expired before license termination. And in fact, the Association concedes this point on page 31 of its reply brief. It characterizes our argument correctly. It states that the Commission argues that it must only terminate a license if it does not decide to extend it, and cites our brief at page 64 when we make this argument. And the Association continues, stating, while that is true, they think it's irrelevant because they believe we should have terminated the license earlier. But the point is, there's nothing in Section 13 of the Federal Power Act that precludes extending the deadline and license after the deadline has already expired. The question is whether the license has actually terminated itself. So I mean, this seems like a different situation, so that two-year period. So leaving aside, do you have other cases where there's an extension being granted, and then, in effect, the company busts the deadline and nothing happens, and the license expires by operation of law? Do you have any other cases like that where the Commission has addressed intervention? Well, Your Honor, if I could push back on your premise that the license expires by operation of law, I don't see that language anywhere in the statute that a license expires. A deadline can expire, and then the license becomes defunct once the Commission terminates the license. So to answer your question directly, I do not have a case for that proposition, but it wouldn't have arisen before because before October 2018, with the revision to Section 13 extending the maximum extensions from two years to eight years, there was no opportunity to request additional license extensions. The Association cited Central Maine and City of Tacoma as examples of where the Commission might allow intervention extension if time proceeds. Those orders are inapposite. First of all, the statement that the Commission might grant intervention was in dicta. And second, those were distinct because those had to do with filing compliance plans, which these compliance plans are required by the original license. Here, the license was originally issued in 2014, and there's no statutory time limit on filing those licenses. Here, there is a limit. There is, under the new statute, an eight-year extension available and the old two-year extension. So the circumstance just cannot arise in this situation where you have repeated extensions over an indefinite period of time. So those two cases are not applicable. If I could return to Rule 214, though, the Association tries to plant a clarity on the rule that does not exist. Nothing in the Act of Provisions provides that the entity has the absolute right to intervene in any Commission proceeding. The Association falls under A3, which discusses other courses that are perceived to intervene. A1 and A2 provide that certain entities do have an absolute right to intervene in a Commission. The Secretary of Energy, the Advisory Council on Historic Preservation, State Wildlife Agencies, the text of those provisions provides that those parties are a party in any proceeding and that they have the absolute right to intervene in any Commission proceeding. Those are the words that are absolutely stated in the Act of Provisions. Mr. Fish, would you move closer to us? I'm having difficulty hearing you, and my technical people say it's because you're standing too far away. Oh, I'm sorry, Your Honor. Is that better? Yes. Okay, I'll try to speak up. So where the regulations include an affirmative right in two provisions, not applicable here, but it's absent in the provision that is applicable here, then under Supreme Court precedent, and I'm thinking of Energy v. Delaware, Richard Cooper, 556 U.S. 208, and Sites 222 and 223, that- I'm sorry for interrupting, but you're fading in and out for me as well. I've requested this before. I apologize, Your Honor. That's much better. Okay. Under Defenders, or Delaware Riverkeeper, rather, 556 U.S. 208, 222 to 223, where an affirmative command is provided in two provisions, but it's absent in the applicable provision, as we have here, it's absent in A3, applicable to the association, then at the very least, the agency has discretion on whether that affirmative command in the other provisions applies. And so it was reasonable for the commission to construe its regulations as not providing an absolute right to intervene in any commission proceeding because the association is not Secretary of Energy or another identified party. So it's at least ambiguous, and once we realize that Rule 214 is ambiguous, then we realize, expanding our scope to the greater structure of the commission's regulations, that the association's interpretation simply cannot hold. It creates a direct conflict with other parts of the commission's regulations. For example, Order 184 is very clear. It provides that notice and intervention are permitted where a change to a license actually reshapes the project. And not just that, it does so in a fundamental way. And it lists several examples that all have to do with physical changes. And the commission has reasonably interpreted reshaping a project to mean creating an entirely new project. And in every case that I'm aware of, it has meant a physical change to the plan of project development itself, not just a prevention of time. And so if the association's correct, then Rule 214 is clear where it isn't under A3. Then we have this irreconcilable tension within the commission's own regulations. And there are other reasons that the commission's interpretation is reasonable. Councilwoman? Let me just ask you procedurally, when the two-year period expired, my understanding is the association filed a petition asking for the commission to terminate the license. Is that petition still pending? I don't believe the commission has responded to that petition. However, if the association had wished to enforce it, they could have brought an action in court under Section 706.1 of the Administrative Procedure Act, seeking to compel agency action unlawfully withheld. And they could have brought a mandamus action to do that, arguing that the commission has waited too long to terminate the license. In fact, that's not just a hypothetical scenario. That actually happened in the second part of California Power Exchange, the 2001 case. That case dealt with two mandamus actions. One, regarding— Before you get into that, you haven't really answered my question. So if somebody files an association or somebody else files a petition with the commission, is the commission just free to ignore it? No, Your Honor. The commission is not free to ignore it, but— Well, that's now been two years. That's been two years. But that petition is not on review, Your Honor. I understand that, but it may figure into whether there is another available remedy. But that petition has never been acted on. Is there something in the FERC rules that says if a petition is filed, you can just ignore it for as long as you want? No, there's not, Your Honor. But the association did have a mechanism to enforce its own petition. They never followed up on it. There's a D.C. Circuit case from 2004. You're moving away from the microphone again. There's a D.C. Circuit decision from 2004, American Rivers and Idaho Rivers, 372 F. 413, which discusses the mechanism for seeking to compel agency action otherwise withheld. It's also related to the second part of the California Power Exchange decision. But I think it's important to realize here what the commission did in extending a deadline after license expiration, or rather, to use the association's preferred parlance, failing to terminate the license, is well within the mind run of cases. In fact, their own authorities support our position here and show why what the commission did was not plain or clear error, rather. In Keating v. Kirk, the commission waited 11 years after deadline expiration before terminating the license. In Felt Mills, or sorry, Fall Line, rather, the commission waited seven months to terminate the license. Here, Eagle Crest filed its extension of time request within five months of deadline expiration. In Okanagan, the 2019 order, which the association also raises, the commission waited two years. Now, they'll argue that Okanagan and Keating involve stays, that the commission granted a stay of the deadline. But they can't have it both ways. Either Section 13, by its plain text, as the association argues, requires termination immediately after deadline expiration, or there is some discretion involved, such that the commission can do something like grant a stay. The reality is there is nothing in Section 13 of the Federal Power Act, or Section 6.3 of the commission's regulations, that sets an outer bound before which the commission must terminate a license. It only sets a floor. In their brief at page 32, the association characterizes it as a set date of 90 days. But it doesn't say that. It says at least 90 days. The commission must give at least 90 days' notice. If the commission had wanted to set an outer bound in its regulations, or if Congress had wished to in the statute, it could have done so. But it didn't. So we're left with the association arguing, well, maybe it wasn't unreasonable not to terminate right when 90 days hit. But a week, two weeks, four weeks, no further than that, certainly no further than after Congress enacted the revised Section 13, it gave the commission the statutory authority to grant this second extension request. And I think that gets to the association's retroactivity argument. There's nothing retroactive here. All the commission did was it applied the statute, then in effect, which was passed in October 2018, to Eagle Crest's November 2018 extension request. And under this court's precedent in Urbina-Mauricio, when a law is amended pending agency action, the agency must, must, it's non-discretionary, apply the new law. That's not a retroactive application of the law at all. Their whole argument that this is retroactive depends on the premise that the commission was statutorily required to terminate the license before it did. But there's nothing in Section 13, nothing in Section 6.3 that requires that. And they admit we could, at page 31 of the reply brief, they admit we could extend the deadline in the license after deadline expiration so long as we hadn't already terminated the license itself. And so where are we left? Well, we're left with a compelled application of the law in effect at the time, allowing for eight years of extensions. And their final argument is, well, there are two specific provisions that relate to two specific hydroelectric projects in the 2018 Infrastructure Act that use this term expired license. And that term in those two provisions means that once a deadline in the license expires, then the license becomes defunct. But they can't take a phrase in two specific provisions and import them to the provision that applies here. And that's for a couple of reasons. First, Sections 3007 and 3008 should be read separate and apart from Section 13, not as informing, modifying, or otherwise clarifying the text of Section 13. And that's not just a reasonable interpretation. Congress said as much. In those two provisions, Congress said Section 13 would otherwise apply, but for the specific provisions that relate to these two specific hydroelectric projects. So there's nothing—if 3007 and 3008 supplant Section 13 for those two projects, then they can't be read reasonably to modify Section 13 for other projects. And there's another reason those provisions don't apply. They were enacted in 2018. The operative language in Section 13, which reads, if a licensee does not commence construction by the deadline of a license or is extended by the commission, then after due notice, the commission shall terminate the license. That operative language was passed in the original Federal Power Act, either 1920 or 1935, I'm not sure which. And under the Supreme Court's decision in Fogarty, which we cite, later enacted provisions in different statute—different statutes—cannot somehow be transported back in time to discern congressional intent for the originally enacted statute for the language that is at issue. So 3007 and 3008 have no bearing on this case. I'd like to, if I may, Your Honors, get back to something that the Association said about their alternative theory for why they should be granted intervention. If they lose on the argument that Rule 214 compels intervention in any proceeding, so long as there's no opposition—which, again, that runs a 40 years of commission precedent, dating back to 1981 or 1984 in the decisions I cited—then they argue, well, at least this is a significant alteration of a license because this is resuscitating or reviving a defunct license. But again, that goes back to a false premise. The false premise is that the license became defunct, no longer existed, expired when the deadline of the license expired. That's divorced from any statutory, regulatory, authority, case law, or commission orders. So what we're left with, then, is not—this isn't reapproving the whole plan of project development that was approved back in 2013. All that's happened here is an extension of the deadline of the license. And the commission has reasonably interpreted a significant alteration of the license not to encompass procedural deadline extensions, where the plan of project development remains unchanged. So their alternative argument that it's a significant alteration of the license doesn't apply. But quickly, I'd like to note the jurisdictional issue in this case. The court should not reach those merits issues because the association's challenge here is a collateral attack on the 2014 license order. The collateral attack doctrine bars raising issues that are outside the scope of the proceeding being challenged that were decided with finality in a prior proceeding. And that's exactly what we have here. Section 13 defines the scope of extension of time proceedings. It's very discretionary. The only things the commission needs to consider are whether the licensee has acted in good faith and with due diligence in pursuing project construction. The commission found in the 2019 extension order, paragraph 11, that Eaglecrest had acted with diligence. It submitted all of its pre-construction monitoring management reports. It was working diligently to try to secure the necessary private and public land rights. Tellingly, the association doesn't challenge any of that. They don't challenge the findings that are relevant to this proceeding at all. They argue instead that there are new environmental and regulatory considerations that the commission should consider or must consider. But that's beyond the scope of an extension of time proceeding. And finally, while they argue that there is a new issue on review here, application of revised section 13, that is still intertwined with a review of the underlying merits of the environmental issues in the 2014 license order. Because the association tells us as much. As we state at page 29 of our brief, the association claims the 2014 license order is at the center of this litigation. But that proceeding is complete. The association could have intervened in that proceeding. They never did. And if they had, they could have sought judicial review of the project itself, which now they are belatedly trying to do by leveraging an inapposite proceeding on something else in order to try to reverse what the commission authorized back in 2014. Thank you. Thank you. If the clerk would please put back Ms. White two minutes on the clock for rebuttal for Mr. Gallagher. Thank you. Thank you, your honors. I would like to use all this remaining time. So I just have a few points to hit on here. First, as Judge McEwen noted, this was not a standard extension of time proceeding. So all the authority that FERC can point to, orders regarding that, those really aren't relevant here. So as I think FERC has conceded before us today, there is real no direct authority rejecting intervention in proceedings like this one because there frankly aren't very many proceedings like this one. What do you say to the argument that really it's a sophisticated but unfair collateral attack on the prior proceeding? So your honor, we reject that outright. I don't think we're attacking any part of the prior proceeding. The only reason the prior proceeding is relevant is because that is what granted the license for the project. But what we're trying to address here is the fact that FERC is now trying to unlawfully extend the timeline in which this project can be built. That was not an issue raised in the original proceeding. We had no idea that FERC would do that. Mr. Gallagher, I thought your co-counsel said that the purpose was to reopen the licensing proceeding. And that's what I wrote down when she said it. And it wasn't just an extension, but basically they'd like to start over, which seems to be a collateral attack. If you reopen the licensing proceeding as opposed to determine whether there's been due diligence and the like, that you're really starting a whole other proceeding, which is what FERC's trying to avoid. No, Your Honor. When we said reopen the proceeding, we meant reopen this new proceeding, which is about this license, but it's not the underlying grant of license proceeding. FERC treats these proceedings itself as different things. In fact, it disallowed intervention by a group that had intervened in that original proceeding because it said this was such a different proceeding, this second one. What would be the proceeding that you would be reopening? We would be reopening the proceeding in which FERC made the decision to extend this license on the basis of the retroactive application of the AWIA. And with that, Your Honor, I see my time has expired. So in shorter terms, we would respectfully ask the court to grant our petitions for reviewing the mandamus, and that would set aside both FERC's orders denying NPCA's intervention and its orders granting the license. Thank you. I think that Ms. Zerbe also has rebuttal time. Is that correct? We did intend to use that entire rebuttal time just in my rebuttal, Your Honors. If there was additional time, we'd be happy. I think you've covered everything that you intended to cover, so I appreciate that. With that, the National Parks Conservation Association versus FERC is submitted. I also would like to thank the students and their supervisors at Stanford Law School. The court always appreciates having students argue, and it's always a very good bar for other attorneys to meet. But I also commend Mr. Fish on his argument as well. So with that, National Parks Conservation versus FERC is submitted, and we will now take a 10-minute break, and the lawyers in Iazi versus Hobbs should then be ready to argue. Thank you. My compliments as well. Well done.
judges: McKeown, Nguyen, Whaley